## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT REMEDIES,**<br>**Plaintiff**<br><br>**v.**<br><br>**SOUTHERN AGGREGATES LLC,**<br>**STONEPOINT MATERIALS LLC, AND**<br>**ARCOSA MATERIALS, INC.**<br>**Defendants.** | **CIVIL ACTION NO.:**<br><br><br>**JUDGE:**<br><br><br>**MAGISTRATE:** |

## COMPLAINT AND JURY DEMAND

### I.  INTRODUCTION

1.      This case arises out of an employer's harassment of and discrimination against an employee of Hispanic heritage and the employer's subsequent retaliatory conduct after the employee filed a charge with the Equal Employment Opportunity Commission ("EEOC").

2.      The plaintiff's supervisors routinely called him the following racial and national origin epithets: "wetback," "taco," "Taco Bell," "spic," and "dumb Mexican."

3.      The plaintiff reported this conduct to the employer, but the conduct continued. The plaintiff then filed an EEOC charge, resulting in an EEOC investigation. In the midst of that EEOC investigation, the employer retaliated and terminated the plaintiff's employment.

4.      Under Title VII of the Civil Rights Act of 1964, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin . . . ."  42 U.S.C. § 2000e-2(a)(1). It is likewise an unlawful employment practice to retaliate against an employee who opposes such a practice.  See 42 U.S.C. § 2000e-3(a).

5.     Similarly, La. R.S. 23:332(A) states that "[i]t shall be unlawful discrimination in employment for an employer to engage in any of the following practices: (1) Intentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to compensation, or terms, conditions, or privileges of employment, because of the individual's race . . . or national origin. "  Conspiracy to retaliate against an employee who opposes an unlawful employment practice is also illegal in Louisiana. See La. R.S. 51:2256.

6.     In addition, 42 U.S.C. § 1981(a) states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens. . . ." An at-will employee stands in a contractual relationship with his employer and may maintain a cause of action for uncapped damages under Section 1981.[1]

7.     Plaintiff endured a hostile work environment and was discriminated and retaliated against in violation of the foregoing federal and state laws as more fully set forth below.

## II.  JURISDICTION

8.     The jurisdiction of the Court over this controversy is invoked pursuant to the provisions of 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

## III. VENUE

9.     The unlawful employment practices were committed in the State of Louisiana and, therefore, within the jurisdiction and venue of the United States District Court for the Middle

---

[1] See *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048, 1050 (5th Cir. 1998).

District of Louisiana under 42 U.S.C. § 2000e-5(f)(3). Venue is further proper under the general venue statute, 28 U.S.C. § 1391.

## IV.  PARTIES

10.    Plaintiff Robert Remedies ("Plaintiff" or "Remedies") is of the full age of majority and a resident of Vernon Parish, Louisiana. He is Hispanic. Plaintiff's ancestors came to Louisiana from Spain and Mexico. Plaintiff grew up in Zwolle, Louisiana, which celebrates its Hispanic heritage each October with the Zwolle Tamale Fiesta. Plaintiff's surname is one of several belonging to the Hispanic people of the Zwolle and Ebarb communities of Sabine Parish - scholars refer to this ethnic group as the Adaeseños.[2]

11.    Defendant Southern Aggregates LLC ("Southern Aggregates") is a Delaware limited liability company, which according to information made publicly available by the Louisiana Secretary of State, has its principal office within the Middle District of Louisiana.

12.    Southern Aggregates is a sand and gravel producer operating multiple southeast Louisiana plants in Livingston, East Feliciana, St. Helena, Tangipahoa, Washington, and St. Tammany Parishes. There is also one Southern Aggregates plant in Vernon Parish, Louisiana.[3]

13.    Defendant StonePoint Materials LLC ("StonePoint") is a Delaware limited liability company with a principal place of business in Pennsylvania. On information and belief, at the time of Plaintiff's harassment and/or termination, StonePoint was the parent company of Southern Aggregates. StonePoint is a construction aggregates company providing crushed stone, sand, gravel, and asphalt to markets in ten states, including Louisiana.

14.    Defendant Arcosa Materials, Inc. ("Arcosa") is a Delaware corporation with a principal place of business in Texas. Shortly after or around the time that Plaintiff filed his first

---

[2] See https://www.crt.state.la.us/dataprojects/archaeology/losadaes/_html/3_02_00.htm.
[3] This plant uses a DeRidder, Louisiana (Beauregard Parish) postal address, but it is located in Vernon Parish.

EEOC charge, Arcosa purchased StonePoint and Southern Aggregates. Plaintiff, therefore, pleads the equitable principle of successor liability in employment law.[4] In addition, Arcosa later terminated Plaintiff's employment in retaliation for his having filed an EEOC charge.

15.    Plaintiff alleges that, at all times relevant to this lawsuit, Southern Aggregates, StonePoint, and Arcosa were joint employers of Plaintiff in that they possessed the power to hire and fire Plaintiff, they possessed the right to supervise Plaintiff, they possessed the right to set Plaintiff's work schedule, they paid Plaintiff's salary, they withheld Plaintiff's taxes, they provided Plaintiff's benefits, and they set the terms and conditions of Plaintiff's employment.

16.    Plaintiff alleges that Southern Aggregates, StonePoint, and Arcosa were integrated employers in that, at all times relevant to this lawsuit, they were interrelated in their operations, shared centralized control of labor relations, shared common management, and were under common ownership and/or financial control.

17.    Southern Aggregates, StonePoint, and Arcosa are referred to collectively as "Defendants" or "the Employer."

## V.  STATEMENTS OF FACTS

18.    On or around the end of June 29, 2020, the Employer hired Remedies as a machine operator at Plant 20 in Vernon Parish, Louisiana.

19.    Remedies was onboarded with no EEO policies or training. There were no EEOC posters in the workplace.

---

[4] See *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 750 (5th Cir. 1996); *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1090 (6th Cir. 1974) (extending successor liability doctrine to Title VII cases); *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 744 (7th Cir. 1985) (extending successor liability doctrine to Section 1981 claims).

20.     From approximately August 2020 to November 2020, Remedies' supervisor was Bruce Parker ("Parker" or "Plant Manager Parker"), a Plant Manager with the ability to hire, fire, promote, refuse to promote, and reassign workers to significantly different responsibilities.

21.     Parker routinely called Remedies a "wetback," "Taco Bell," and "taco." Parker is White. On information and belief, Parker continues to work at another of Defendants' plants.

22.     Remedies reported Parker's harassment to Lee Simonson ("Simonson"), another manager. Simonson told Remedies he would take care of the problem, but rather than remedying the matter, Simonson also began addressing Remedies as "wetback," "Taco Bell," and "taco." Simonson is White. On information and belief, Simonson continues to work at another of Defendants' plants.

23.     Remedies also reported Plant Manager Parker's conduct to Operations Manager Les Ray ("Ray" or "Operations Manager Ray") in approximately September 2020. Ray's response was, "That's just how Bruce [Parker] is."

24.     In addition to calling Remedies offensive slurs regarding his race and national origin, Parker also demoted Remedies to a labor hand, removing Remedies from the equipment he operated and putting him to work on the ground. Parker further refused to give Remedies the raise he was entitled to after his initial 90 days of employment.

25.     Remedies reported to Operations Manager Ray that he had not received his 90-day raise. Ray did not respond.

26.     In approximately December 2020, Simonson was made Plant Manager. On or around December 22, 2020, the Employer hired Gus Murray to work in maintenance. Upon meeting Remedies, Gus Murray called Remedies a "spic."

27.     In or around January 2021, Gus Murray ("Murray" or "Plant Manager Murray") became the new Plant Manager. Delbert Cole ("Cole" or "Operations Manager Cole") became Operations Manager at or around this time and was Murray's immediate supervisor.

28.     When Murray became Plant Manager, racial slurs and epithets, intimidation, hostility, and threats became even more frequent. Murray communicated in an offensive and derogatory manner at Plant 20, using Hispanic slurs and the N-word[5] constantly, usually on a daily basis. Murray usually used racial epithets multiple times during each work day. Murray is White.

29.     Plant Manager Murray harassed Remedies, continually referring to him as "spic," "wetback," and "dumb Mexican." In addition, Plant Manager Murray frequently told the Plant 20 crew that they worked like "N-words" and lived like "N-words." Remedies found this harassment to be highly offensive.

30.     The crew at Plant 20 are miners; they work with heavy equipment and engage in potentially dangerous activities including dredging. Plant Manager Murray's constant stream of racial harassment, intimidation, and threats created safety issues at Plant 20 by distracting and demoralizing the crew and making it difficult for them to do their jobs, materially adversely affecting employment.

31.     Kevin Black ("Black" or "VP Black") was a Vice-President of Southern Aggregates and an Executive Vice-President of StonePoint. On or about February 8, 2021, Andre Rice ("Rice"), an African-American member of the crew, reported Murray's pervasive use of offensive racial slurs and insults to VP Black.

32.     On information and belief, VP Black referred Rice's report to Operations Manager Cole, Murray's immediate supervisor.

---

[5] The N-word refers to the offensive racial epithet "nigger."

33.    Also, on or about February 9, 2021, Operations Manager Cole contacted crew members at Plant 20 by telephone. These crew members also reported Plant Manager Murray's constant use of racial and national origin epithets.

34.    On or about February 10, 2021, Plant Manager Murray attended a previously scheduled managers' meeting outside of Plant 20.

35.    The following day, on or about February 11, 2021, Plant Manager Murray returned to Plant 20.

36.    On that day, during a safety meeting or shortly after, the crew members – including but not limited to white employees – aired their grievances about Murray's use of racial and national origin slurs. Murray said he would stop.

37.    Murray did not stop. The same day, on or around February 11, 2021, Murray continued using racial and national origin slurs and threatened the crew with the loss of their jobs.

38.    On or about February 24, 2021, the Employer terminated Rice's employment.

39.    After Rice's termination, Plant Manager Murray celebrated at Plant 20. Remedies heard Murray say, "We took the head off the snake – we don't have to put up with that N-word's shit no more."

40.    On information and belief, the Employer failed to train and/or supervise its managers regarding harassing statements and conduct in the workplace, failed to implement effective policies prohibiting such statements and conduct, and failed to have qualified managers in place to prevent such statements and conduct.

41.    On information and belief, Defendants tolerated and continue to tolerate a culture of racism, national origin discrimination, racial and national origin harassment, and retaliation for

reporting, which constitutes a pattern and practice of illegal racial and national origin discrimination and retaliation.

42.    On or around March 15, 2021, the Employer sent Sandy Gerberg ("Gerberg"), Chief Financial Controller, and Robert Sengelmann ("Sengelmann"), General Manager, to interview employees about Murray's conduct.

43.    Gerberg and Sengelmann interviewed Remedies, and Remedies reported Plant Manager Murray's use of racial and national origin epithets in the workplace. Remedies also attempted to report former Plant Manager Parker's use of racial and national origin epithets, but Gerberg and Sengelmann stopped him, stating they did not want to hear about Parker. When Remedies insisted on talking about how Parker had called him "wetback," "Taco Bell," and "taco," Gerberg became angry and shut down the conversation, stating they were only there to discuss Plant Manager Murray.

44.    On or around March 15, 2021, Remedies filed an EEOC charge, asserting race and national origin hostile work environment, discrimination, and retaliation.

45.    While Gerberg and Sengelmann conducted the interviews, Remedies saw Plant Manager Murray at the plant engaging in a verbal tirade about the interviews and screaming at an interviewee.

46.    On or around March 17, 2021, the Employer moved Plant Manager Murray to another plant rather than terminating his employment.

47.    Thereafter, Billy Lutes ("Lutes" or "Plant Manager Lutes") replaced Plant Manager Murray. In addition, Ray once again became Operations Manager over Plant 20. Previously, Remedies had reported the conduct of former Plant Manager Parker to Ray in 2020.

48.     After Remedies filed his EEOC charge, the EEOC engaged in a months-long investigation, which involved, among other things, interviewing employees, including Remedies. Both Plant Manager Lutes and Operations Manager Ray were aware of the EEOC investigation. In addition, Operations Manager Ray was an individual specifically referenced in Remedies' EEOC charge.

49.     Plaintiff continued to report his lack of a pay raise to Plant Manager Lutes to no avail.

50.     On information and belief, the Employer exerted pressure on employees regarding what to say during EEOC interviews.

51.     On information and belief, the Employer pressured Lutes to scrutinize Remedies and find a way to terminate him because he had filed an EEOC charge.

52.     In or around October 2021, the Employer began advertising for Remedies' job.

53.     On or around November 2, 2021, Lutes suspended Remedies. The next day Lutes and Ray terminated Remedies' employment. The reasons the Employer gave for suspension and termination are false and a pretext for retaliation.

54.     The Employer replaced Plaintiff with a person outside the protected class.

55.     After the retaliatory termination of his employment, Plaintiff filed a second EEOC charge.

## VI.  STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF – RACIAL AND NATIONAL ORIGIN DISCRIMINATION BASED ON DISPARATE TREATMENT AND HOSTILE ENVIRONMENT

56.     Plaintiff restates, re-alleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs 1 through 55, inclusive, herein.

57.    Plaintiff is a member of two protected classes – race and national origin. Plaintiff is Hispanic. His ancestors were people of Spanish and Mexican national origin.

58.    Plaintiff was qualified for the position of operator.

59.    Plaintiff was terminated from employment, which constituted an adverse employment action.

60.    After his termination, Plaintiff's position was filled or his duties assumed by an individual outside the protected classes.

61.    Others outside the protected classes were treated more favorably than Plaintiff.

62.    Plaintiff was terminated because of or on the basis of race and/or national origin.

63.    The purported reasons for Plaintiff's termination are false and pretextual.

64.    In addition, Plaintiff was subjected to unwelcome racial and national origin harassment. Plaintiff's workplace was permeated with severe and/or pervasive discriminatory intimidation, ridicule, and insult that altered the conditions of Plaintiff's employment and created a hostile and/or abusive working environment constituting an adverse employment action.

65.    The unwelcome severe and/or pervasive racial and national origin harassment to which Plaintiff was subjected was committed by managers who were able to make significant changes in Plaintiff's employment status, including demotion and termination.

66.    The harassment to which Plaintiff was subjected was both objectively and subjectively severe and/or pervasive. A reasonable person would find the work environment hostile or abusive, and Plaintiff himself perceived it to be so.

67.    The Employer knew or should have known of the harassment and failed to take prompt remedial action, permitting submission to the harassment to become a term and condition of employment.

68.     Plaintiff's termination was a tangible employment action for which Defendants are strictly liable.

69.     Defendants are liable to Plaintiff for illegal discrimination in employment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.*

## SECOND CLAIM FOR RELIEF – RETALIATION

70.     Plaintiff restates, re-alleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs 1 through 69, inclusive, herein.

71.     Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.*, and La. R.S. 51:2256 (Louisiana's employment retaliation statute), an individual is protected from retaliation for opposing unlawful discrimination in the workplace.

72.     Plaintiff reported his supervisors' racial and national origin epithets and harassment to upper management. Plaintiff also filed an EEOC charge and participated in an EEOC investigation. These actions were protected activities.

73.     During the course of the EEOC investigation, the Employer engaged in conduct which might have dissuaded a reasonable worker from making or supporting a charge of discrimination, including but not limited to terminating Plaintiff's employment, which constituted materially adverse employment actions causally connected to the protected activity.

74.     Plaintiff had a reasonable belief that his supervisors' racial and national origin harassment was unlawful and the harassment was, in fact, unlawful, as set forth in the First Claim for Relief.

75.     Plaintiff's termination would not have occurred but for his protected activity.

76.     The purported reasons for Plaintiff's termination are false and pretextual.

77.     Plaintiff asserts that in violation of La. R.S. 51:2256, Plaintiff's supervisors and/or members of Defendants' management conspired to retaliate against him for opposing discriminatory employment practices made unlawful in Louisiana.

78.     Defendants are liable to Plaintiff for illegal employment retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq*., and La. R.S. 51:2256 (Louisiana's employment retaliation statute).

## VII.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

79.     Prior to filing this action, Plaintiff timely filed two written charges with the EEOC within the appropriate number of days and has received right to sue letters.

80.     Plaintiff has filed this action prior to the expiration of 90 days from the date of receiving his right to sue letters from the EEOC.  Plaintiff has exhausted administrative remedies and prerequisites.

## VIII.  DAMAGES

81.     Plaintiff restates, re-alleges, and re-avers and hereby incorporates by reference any and all allegations of paragraphs 1 through 80, inclusive herein.

82.     Plaintiff alleges that the Employer engaged in a discriminatory and/or retaliatory practice or practices with malice, evil motive, or reckless or callous indifference to the federally protected rights of Plaintiff. Accordingly, Plaintiff is entitled to punitive damages under Title VII of the Civil Rights Act of 1964 and under 42 U.S.C. § 1981.

83.     In addition, as a result of the Employer's illegal conduct in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, Plaintiff is entitled to the following relief: compensatory damages, back pay, benefits, reasonable attorney fees, and costs, including experts.

84.    As a result of the Employer's illegal conduct in violation of Louisiana Employment Discrimination Law,  La. R.S. 23:301 *et seq.*, and La. R.S. 51:2256, Plaintiff is entitled to the following relief: compensatory damages, back pay, benefits, reasonable attorney fees, and costs, including experts.

## IX.  JURY DEMAND

85.    Plaintiff herein demands a trial by jury of all issues in this action that may be tried by jury.

## X.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for judgment as follows:

a.    For punitive damages;

b.    For compensatory damages, including physical and/or emotional damages, as well as any out-of-pocket expenses;

c.    For back pay, including wages and benefits.

d.    For attorney's fees and costs, including experts;

e.    For pre- and post-judgment interest;

f.    For injunctive and other equitable relief as provided by law, including but not limited to ordering appropriate training for Defendants' managers and employees and removing false and discriminatory documents from plaintiff's employment file;

g.    For such other and further relief as may be just and proper.

Respectfully submitted,


*/s/ Robert B. Landry III*
Robert B. Landry, III  (#18998)
rlandry@landryfirm.com
**ROBERT B. LANDRY III, PLC**
5420 Corporate Boulevard, Suite 303
Baton Rouge, Louisiana  70808
Telephone:     (225) 349-7460
Facsimile:      (225) 349-7466

**COUNSEL FOR PLAINTIFF,
ROBERT REMEDIES**